UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD ALBERT BRINSKELE,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., et al.,

Defendants.

Case No. 25-cv-05934-EMC

**ORDER DISMISSING THIRD AMENDED COMPLAINT**

Docket No. 31, 36, 39

## I.      INTRODUCTION

Plaintiff Edward Brinskele proceeds *pro se* in this action against JPMorgan Chase Bank, N.A. ("Chase") and Clear Recon Corp. ("CRC") arising from a home loan secured by his property at 12200 Pt. Reyes Petaluma Road, in Nicasio, California (the "Property"). Mr. Brinskele's allegations concern the origination of the loan by Washington Mutual Bank ("WaMu"), the subsequent transfer of WaMu's assets to Chase following WaMu's entry into receivership in 2008, and Defendants' later efforts to enforce the loan through foreclosure. Mr. Brinskele has amended his complaint several times, culminating in a Third Amended Complaint ("TAC") that he filed while motions to dismiss the Second Amended Complaint ("SAC") were pending.

For the reasons set forth below, the Court **GRANTS** Mr. Brinskele leave to file the TAC, deems it the operative complaint, and **DISMISSES** it in its entirety for failing to state a claim. The TAC restates theories previously asserted in the SAC and does not cure the deficiencies identified in Defendants' motions to dismiss. Because Mr. Brinskele has already amended his complaint multiple times and because further amendment would be futile, **DISMISSAL IS WITHOUT LEAVE TO AMEND**.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, the Court **GRANTS** Chase's request for judicial notice ("RJN") of Judge Wilken's order entering judgment against Mr. Brinskele in the matter *United States v. Edward A. Brinskele, et al.*, No. 4:17-cv-1410-CW.  RJN (Dkt. 24).  Mr. Brinskele has not objected to Chase's request.

The request for judicial notice concerns a federal district court order which may be judicially noticed for its existence and its legal effect, if any, though not for the truth of any disputed facts referenced therein.  *See Doran v. Aus*, 308 F. App'x 49, 50 (9th Cir. 2009) ("Materials from a proceeding in another tribunal are appropriate for judicial notice.").

## III.    FACTUAL & PROCEDURAL BACKGROUND

Mr. Brinskele obtained a $500,000 adjustable-rate, negatively amortizing loan from WaMu in 2001.  TAC (Dkt. 30) ¶ 14, Ex. B.  The loan was secured against the Property.  *Id.* ¶ 14.

WaMu collapsed in 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver.  *Id.* ¶¶ 17–18.  Chase thereafter acquired certain WaMu assets, including Mr. Brinskele's loan, in 2008.  *Id.* ¶ 3.

In January 2018, the FDIC recorded an assignment of the deed of trust to Chase, thereby identifying Chase as beneficiary under the 2001 deed of trust.  *See* CRC Motion to Dismiss (Dkt. 31) at 4.  In October 2024, CRC, acting as foreclosure trustee, recorded a Notice of Default.  *Id.* On June 18, 2025, CRC recorded a Notice of Trustee's Sale setting an August 6, 2025 sale date.  *Id.* Before Plaintiff filed this action, however, Chase instructed CRC to cancel the scheduled sale, and Chase represented to the Court that it would not proceed with a sale while a parallel Northern District case is pending before Judge Wilken.  *Id.*; September 4, 2025 Hearing Minute Entry (Dkt. 33).

Mr. Brinskele is the defendant in a separate case — a federal tax foreclosure action involving the same Property.  *See U.S. v. Brinskele*, No. 4:17-cv-1410-CW (the "Tax Foreclosure" case).  On August 6, 2025, presiding Judge Wilken entered a judgment ordering foreclosure of federal tax and judgment liens and directing that the Property be sold.  RJN Ex. 1.  The judgment also sets out the distribution of sale proceeds and identifies Chase's deed of trust as among the

interests to be paid from those proceeds.  *Id.*  The parallel Tax Foreclosure judgment does not resolve the merits of Plaintiff's claims in this case, nor does this Court rely on that judgment for purposes of claim preclusion.  Its existence is relevant as context of Mr. Brinskele's challenge to Chase and CRC's authority to enforce the loan through foreclosure.

Mr. Brinskele alleges that WaMu improperly inflated his income, failed to disclose key loan terms, and forced him into a predatory loan scheme.  *Id.* ¶ 16.  Chase, as WaMu's successor in interest following the FDIC receivership, now serves as beneficiary under the 2001 deed of trust and loan servicer.  *See* CRC Motion to Dismiss at 4.  CRC serves as the substituted foreclosure trustee responsible for carrying out foreclosure proceedings at Chase's direction.  *See id.*

Mr. Brinskele asserts that Chase does not possess the original loan documents or complete WaMu-era payment records.  *Id.* ¶ 4.  According to Mr. Brinskele, Chase's alleged inability to locate these documents renders it unable to establish its authority to enforce the loan or foreclose on the Property.  *Id.* ¶ 1.

Mr. Brinskele initiated this action on July 15, 2025, and has amended his complaint multiple times.  Plaintiff filed his SAC, which Defendants subsequently moved to dismiss.  SAC (Dkt. 8); CRC Motion to Dismiss (Dkt. 31); Chase Motion to Dismiss (Dkt. 36).  The SAC asserts a wide array of federal and state claims: mortgage fraud (Count I); wrongful foreclosure (Count II); breach of contract and breach of the implied covenant of good faith and fair dealing (Count III); violations of the Truth in Lending Act (TILA), Real Estate Settlement Procedures Act ("RESPA"), and Home Ownership Equity Protection Act ("HOEPA") (Count IV); civil conspiracy (Count V); unjust enrichment (Count VI); tortious interference with prospective economic advantage based on alleged interference with refinancing efforts (Count VIII); an "expanded civil conspiracy" among Chase and IRS personnel to use fraudulent tax liens to facilitate foreclosure (Count IX); Fair Credit Reporting Act ("FCRA") violations based on allegedly false credit reporting (Count X); intentional infliction of emotional distress (Count XI); a constitutional tort/Bivens claim for due process violations by IRS officials (Count XII); abuse of process (Count XIII); Administrative Procedures Act ("APA") and Freedom of Information Act ("FOIA") violations premised on IRS enforcement and alleged failures to respond to information

1    and lien-removal requests (Count XIV); fraud on the court by IRS attorneys in prior proceedings

2    (Count XV); and "unlawful collection under void judgment" based on continued tax enforcement

3    under allegedly void federal judgments (Count XVI).  SAC ¶¶ 17–55.  The SAC seeks declaratory

4    relief (Count VII), and compensatory, statutory, and punitive damages.  *Id.* ¶ 56.

5            The subsequently-filed TAC narrows the set of claims by omitting most IRS-related causes

6    of action, the FOIA and APA claims, and several ancillary theories appearing in the SAC.  *See*

7    TAC.  The TAC, however, maintains the same core allegations underlying the SAC: that Chase

8    lacks authority to enforce the loan because it cannot produce original WaMu documents and — as

9    a new centerpiece theory exclusive to the TAC — because the promissory note bears an undated

10    endorsement.  *See* TAC ¶¶ 1–4.  The TAC reframes the undated endorsement as "prima facie

11    evidence of forgery designed to conceal Chase's lack of authority" to enforce the loan, alleges that

12    the absence of original loan documents demonstrates fraudulent intent, and adds new claims for

13    slander of title, quiet title, and violations of the Racketeer Influenced and Corrupt Organizations

14    Act ("RICO") and California's Unfair Competition Law ("UCL").  *Id.* ¶¶ 1–4, 46–52, 57–61, 71–

15    74, 85–87.  Aside from these additions, the TAC rests on the same factual predicates and

16    substantially overlaps with the theories advanced in the SAC.

17                            **IV.    <u>LEGAL STANDARD</u>**

18            A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint or

19    counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which

20    relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires

21    only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in

22    order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"

23    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  The

24    factual allegations in the pleading are accepted as true and are construed in the light most

25    favorable to the plaintiff.  *Harper v. Need*, 71 F.4th 1181, 1184 (9th Cir. 2023).

26            Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to

27    provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

28    formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

United States District Court
Northern District of California

1    (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Hence, the Court need not assume unstated

2    facts, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

3    ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific

4    task that requires the reviewing court to draw on its judicial experience and common sense.");

5    *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266

6    F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are

7    merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

8    Under *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must

9    instead allege "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.

10    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

11    draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

12    U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for

13    more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads

14    facts that are merely consistent with a defendant's liability, it stops short of the line between

15    possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556–57)

16    (internal quotation marks omitted).  In sum, if the facts alleged foster a reasonable inference of

17    liability — stronger than a mere possibility — the claim survives; if they do not, the claim must be

18    dismissed.

19    For complaints alleging fraud or mistake, a plaintiff must "state with *particularity* the

20    circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, "Rule 9(b)

21    demands that the circumstances constituting the alleged fraud 'be specific enough to give

22    defendants notice of the particular misconduct . . . so that they can defend against the charge and

23    not just deny that they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

24    1124 (9th Cir. 2009) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal

25    quotation marks omitted).  *Kearns* also clarifies that the particularity requirement in Rule 9(b)

26    applies to claims alleging a "unified course of fraudulent conduct," even if fraud is not the basis of

27    the plaintiff's claim.  *Id.* at 1125.  In such instances, the broader claim sounds in fraud such that

28    "the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b).  *Id.*

1   (emphasis in original) (internal quotation marks omitted).

2       Ordinarily, a *pro se* complaint will be liberally construed and held to less stringent

3   standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94

4   (2007).  However, the Court may not "supply essential elements of the claim that were not initially

5   pled." *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also*

6   *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings

7   liberally in their favor, *pro se* litigants are bound by the rules of procedure.").

8                              **V.      DISCUSSION**

9   A.    Leave to Amend

10      While the motion was pending, Mr. Brinskele unilaterally filed his TAC and only

11  subsequently sought leave of the Court.  Motion for Leave (Dkt. 39).  The TAC largely restates

12  the theories asserted in the SAC, though it narrows the claims presented and expands upon several

13  of the underlying allegations. *See* TAC.  It omits several IRS-centric claims and focuses more

14  squarely on Chase and CRC's conduct. *See id.*  The TAC also elevates a new centerpiece theory:

15  that an undated endorsement on a promissory note constitutes "prima facie evidence of forgery

16  designed to conceal Chase's lack of authority to enforce" the instrument via foreclosure. *Id.* ¶¶ 1,

17  18 ("The deliberate omission of a date evidences lack of authority and fraudulent intent.").

18      The Court hereby **GRANTS** leave to file the TAC and deems that pleading the operative

19  complaint.  The Court evaluates the TAC alongside the SAC for purposes of this order.  Having

20  reviewed both pleadings, the Court concludes that the TAC does not remedy the deficiencies

21  present in the SAC.  Accordingly, for the reasons set forth below, the TAC is **DISMISSED** for

22  failure to state a claim.

23  B.    Insufficiency of Plaintiff's Allegations

24      Because *pro se* filings must be construed liberally, and because the TAC asserts the same

25  theories and factual predicates as the SAC, the Court evaluates both pleadings to determine

26  whether the TAC cures the deficiencies identified in Defendants' motions.  As explained below, it

27  does not.  Although the TAC contains some additional allegations, primarily assertions of fraud

28  based on Chase's undated endorsement and purported failure to produce original versions of

United States District Court
Northern District of California

6

1    certain loan documents, those allegations are conclusory and do not alter the substance of Mr.

2    Brinskele's overarching claims.  The TAC is materially similar to the SAC, and under *Ramirez v.*

3    *Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015), the TAC supersedes the earlier

4    pleading.  While the Court could deny the pending motions to dismiss as moot because they are

5    directed at the SAC, the Court instead exercises its discretion to address the TAC in the interest of

6    judicial economy because the two pleadings substantively and substantially overlap.  The Court

7    may dismiss claims or pleadings *sua sponte* for failure to state a claim, regardless of whether a

8    motion to dismiss is directed at the specific pleading.  *See Omar v. Sea-Land Serv. Inc.*, 813 F.2d

9    986, 991 (9th Cir. 1987); *Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981).  Here, the deficiencies

10   in the TAC warrant dismissal.  Although *pro se* pleadings are held to less stringent standards, "a

11   *pro se* litigant is not excused from knowing the most basic pleading requirements" or "from

12   following court rules."  *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107

13   (9th Cir. 2000).

14        Even affording Mr. Brinskele the most liberal possible reading of his pleadings, they fail to

15   state any cognizable claim.  Moreover, Mr. Brinskele has taken advantage of numerous

16   opportunities to amend his complaints and, in light of the conclusory and conjectural nature of his

17   claims, further amendment will be futile.  Federal Rule of Civil Procedure 15 states that courts

18   shall "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But courts

19   must also limit a litigant's ability to amend in light of "repeated failure to cure deficiencies by

20   amendments previously allowed" and "futility of amendment."  *Foman v. Davis*, 371 U.S. 178,

21   182 (1962); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)

22   (permitting denial of leave to amend where further amendment "could not possibly cure the

23   deficiency" or in light of "repeated failure to cure deficiencies by previous amendment").  On this

24   basis, and for the reasons set forth below, Mr. Brinskele's TAC is **DISMISSED WITHOUT**

25   **LEAVE TO AMEND**.

26        1.    Mortgage Fraud, Fraud on the Court, and Civil Conspiracy

27        Mr. Brinskele contends in his SAC and TAC that WaMu engaged in predatory or

28   fraudulent conduct in originating the 2001 loan, and that Chase perpetuated this alleged

7

misconduct by asserting rights under what he characterizes as incomplete or fabricated documentation, including an undated endorsement on the promissory note. TAC ¶¶ 1–4. The SAC presents only barebones, conclusory allegations that "Defendants made material misrepresentations and omissions during loan origination and servicing," and that "Plaintiff suffered substantial financial and emotional harm as a proximate result." SAC ¶¶ 17–18. The TAC minimally expands on these allegations, contending that Defendants made false representations regarding their authority to enforce the promissory note via foreclosure, and that Defendants knew their representations were false because they deliberately omitted an endorsement date, failed to present original WaMu loan documents and admitted that records were missing,[1] and because of the alleged "mathematical impossibility of their servicing claims." TAC ¶¶ 35–39.

For the reasons stated below, these claims do not satisfy Federal Rules of Civil Procedure 9(b) and 12(b)(6), and are accordingly **DISMISSED**.[2]

***First***, with respect to WaMu's conduct, Mr. Brinskele does not identify particular misrepresentations (other than the undated endorsement), speakers, the time and place of false statements, or facts supporting a finding of reliance or resultant damages. Claims of fraud must be supported by supporting facts pled "with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000). Here, Mr. Brinskele's broad allegations of fraud do not provide Defendants with sufficient notice or information of the particular misconduct such that they could effectively defend themselves against the allegations. *See Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (holding that a plaintiff alleging fraud must allege fraud with sufficient specificity to "give defendants notice of the particular misconduct . . . so that they can

---

[1] Mr. Brinskele's TAC repeatedly asserts that Chase confirmed it lacks original WaMu loan documents. But Exhibit C to the TAC is a letter from Steve Brooks, an Executive Director at Chase, in which he states: "Thank you for your request. We've enclosed the payment history for this mortgage loan." TAC Ex. C. The correspondence therefore does not clearly support Mr. Brinskele's assertion that Chase admitted it lacked possession of relevant records.

[2] To the extent Mr. Brinskele's claims are premised solely on WaMu's origination conduct in 2001, they would be barred by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") administrative exhaustion requirement, 12 U.S.C. § 1821(d)(13)(D). The Court does not resolve the scope of that bar here, however, because Mr. Brinskele's claims fail on independent grounds.

United States District Court
Northern District of California

defend against the charge and not just deny that they have done anything wrong").  Mr. Brinskele does not identify the individuals affiliated with WaMu or Chase that made material misrepresentations or inflated his income; nor does he identify the purportedly "material misrepresentations and omissions" made during loan servicing.  Nor does he identify precisely how he relied on any such alleged misrepresentations made subsequent to origination of the loan. He fails to satisfy Rule 9(b).

Mr. Brinskele also alleges that Defendants lack authority to foreclose on the Property because they allegedly cannot produce original WaMu documents.  *See* TAC ¶¶ 26–27, 31, 35–36. But courts have consistently rejected similar "show me the note" theories.  *See, e.g.*, *Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal.App.4th 433, 440–41 (Cal. App. 2012) (ruling that beneficiary did not need to possess underlying promissory note as a prerequisite to foreclosure and that "[w]e likewise see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note"); *Kolbe v. J.P. Morgan Chase Bank N.A.*, No. C-11-01532-SI, 2011 WL 4965065, at *3 (N.D. Cal. Oct. 13, 2011) (Illston, J.) ("Defendants are also correct that initiation of lawful foreclosure in California does not necessarily require possession of the original promissory notes. . . . 'Courts have uniformly found that physical possession of the original promissory note is not a prerequisite to initiating foreclosure proceedings.'").

***Second***, with respect to the undated endorsement — Mr. Brinskele's centerpiece evidence of fraud — no factual basis exists for the inference that the undated endorsement is "prima facie evidence of forgery."  Contrary to Mr. Brinskele's suggestion that an undated endorsement is ineffective or unauthorized, TAC ¶¶ 41–42, California Commercial Code § 3308 states that, in this given context, a signature "is presumed to be authentic and authorized" regardless of whether the signature is accompanied by a date.  *See* Cal. Com. Code § 3308.  In the absence of any particularized showing of fraud, Mr. Brinskele's claim fails to state a claim for which relief can be granted.  *See Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1124–25 (C.D. Cal. 2012) (holding that "Plaintiff Alva fails the first element of fraud because he cannot in conclusory terms allege that Defendants' customer service agents 'lied about his eligibility' or 'fraudulently

1    misplaced documents' without stating the 'who, what, when, where, and how' of the fraudulent

2    activity" and "[t]hus, Plaintiffs' claims on the basis of fraud are dismissed for failing to state a

3    claim upon which relief can be granted due to lack of particularity in pleading") (quoting *Vess v.*

4    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

5        ***Third***, Mr. Brinskele's fraud on the court and civil conspiracy claims concern alleged

6    misconduct by IRS attorneys in unrelated (and unidentified) "prior proceedings."  SAC ¶ 51.  Mr.

7    Brinskele does not plausibly allege any act or omission by Chase or CRC constituting fraud,

8    intentional deception, fabrication of evidence, or bribery that would severely undermine the

9    integrity of the judicial process.  *See, e.g.*, *U.S. v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167–68

10   (9th Cir. 2017) (emphasizing that "not all fraud is fraud on the court" and that "fraud on the court

11   'must involve an unconscionable plan or scheme which is designed to improperly influence the

12   court in its decision'").  Mr. Brinskele does not allege facts showing underlying conspiratorial or

13   tortious actions by any of the defendants in this matter.  Nor does the implied allegation that

14   Defendants acted in concert or comprised a conspiracy against homeowners suffice at the pleading

15   stage.  Accordingly, Mr. Brinskele fails to adequately allege fraud on the court.

16       For the foregoing reasons, Mr. Brinskele's mortgage fraud, fraud on the court, and civil

17   conspiracy claims fail to state a claim and are hereby **DISMISSED**.

18       2.    <u>Wrongful Foreclosure</u>

19       Mr. Brinskele alleges in his SAC and TAC that Defendants initiated foreclosure without

20   legal authority or proper notice.  SAC ¶¶ 19–20.  The TAC elaborates on this theory, asserting that

21   Defendants lacked authority to foreclose because the promissory note contains an undated

22   endorsement, Chase allegedly cannot produce original loan documents, and Defendants

23   purportedly failed to establish chain of title and violated California's foreclosure statutes and the

24   Uniform Commercial Code.  TAC ¶ 54.

25       "[T]o maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants

26   caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of

27   sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff

28   tendered the amount of the secured indebtedness or was excused from tendering."  *Chavez v.*

1   *Indymac Mortgage Servs.*, 219 Cal.App.4th 1052, 1062 (Cal. App. 2013) (citing *Lona v. CitiBank,*

2   *N.A.*, 202 Cal.App.4th 89, 112 (Cal. App. 2011)).  Here, Defendants have represented to the Court

3   that they would not commence foreclosure until the Tax Foreclosure case is finally resolved.  Sept.

4   4, 2025 Minute Entry.  Accordingly, there has been no sale and Mr. Brinskele has not suffered

5   prejudice or harm, and he has not met the requirements to maintain a wrongful foreclosure claim.

6        The California Supreme Court has not decisively resolved whether a borrower may

7   maintain pre-sale a wrongful foreclosure claim.  *See Shwurong Lee v. Bank of N.Y. Mellon*, No.

8   16-cv-05094-JST, 2016 WL 8729924, at *6 n.4 (N.D. Cal. Dec. 9, 2016) (noting that the

9   California Supreme Court has "yet to decide whether pre-sale wrongful foreclosure claims are

10  permissible").  The California Court of Appeal has recognized that, "even assuming it is

11  theoretically possible to bring a pre-sale wrongful foreclosure action to challenge a void

12  assignment of a deed of trust," a plaintiff must allege facts that, if true, would render the

13  assignment or asserted authority to foreclose void.  *Rivera v. Nationstar Mortgage LLC*, 2019 WL

14  4729460, at *5 (Cal. App. Sept. 27, 2019).  Given the Court's earlier conclusion that Mr.

15  Brinskele has not pled facts supporting a plausible fraud theory, his pleadings also fail to support a

16  pre-sale wrongful foreclosure claim even if such a claim were permitted.

17        For the foregoing reasons, Mr. Brinskele's wrongful foreclosure claim is **DISMISSED**.

18        3.    <u>Breach of Contract and Implied Covenant of Good Faith and Fair Dealing</u>

19        Mr. Brinskele's SAC and TAC allege that Defendants breached the loan agreement by

20  charging inflated interest, failing to provide certain documents, and omitting the date from an

21  endorsement on the promissory note.  TAC ¶¶ 63–65.  These allegations fail because Mr.

22  Brinskele does not identify a single contractual provision that Defendants allegedly violated.

23  From the documents presented, no loan agreement required WaMu or its successors in interest to

24  retain or produce original documents or to offer refinancing options.  *See* SAC; TAC.  Nor do any

25  contractual terms promise Mr. Brinskele a preferable interest rate beyond the terms disclosed in

26  the note.

27        The implied covenant claim also fails because Mr. Brinskele does not allege conduct that

28  unfairly frustrated a benefit conferred by contract.  *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317,

United States District Court
Northern District of California

349–50 (Cal. 2000) ("The covenant of good faith and fair dealing . . . exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.") (emphasis in original).  Rather, Mr. Brinskele's pleadings appear to take issue with Defendants' enforcement of the loan according to its written terms.  *See* SAC; TAC.  Such enforcement actions pursuant to contract cannot give rise to a claim alleging breach of the implied covenant of good faith and fair dealing.  *See Guz*, 24 Cal.4th at 349–50.

Accordingly, Mr. Brinskele's breach of contract and implied covenant of good faith and fair dealing claims are **DISMISSED**.

### 4. TILA, HOEPA, and RESPA

Mr. Brinskele's federal lending-disclosure claims fail for two key reasons.

***First***, Mr. Brinskele's claims alleging violations of TILA, HOEPA, and RESPA are untimely.  An action alleging a violation of TILA must be brought within one year of the alleged violation.  15 U.S.C. § 1640(e).  HOEPA imposes a three-year statute of limitations.  *Id.*  And RESPA violations must be brought within three years or, in some limited instances, one year.  12 U.S.C. § 2614.  The loan at issue here originated in 2001, Chase acquired WaMu's loan portfolio in 2008, and the assignment of the deed of trust was finally recorded in 2018.  *See* SAC ¶ 4; CRC Motion to Dismiss at 4.  Thus, under no circumstance are Mr. Brinskele's federal lending-disclosure claims still viable.

***Second***, the pleadings do not identify a specific disclosure violation beyond broad and conclusory assertions of forgery and concealment by Defendants.  Absent plausible factual allegations showing deception, Mr. Brinskele's claims for violations of TILA, HOEPA, and RESPA cannot survive a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).

Accordingly, Mr. Brinskele's claims alleging violations of TILA, HOEPA, and RESPA are **DISMISSED**.

### 5. Tortious Interference with Prospective Economic Advantage

Mr. Brinskele alleges that Defendants colluded with the IRS to interfere "with Plaintiff's refinancing efforts."  SAC ¶ 30.  "The elements of a claim for tortious interference with prospective economic [advantage] generally are the factors for tortious interference with contract."

United States District Court
Northern District of California

1   *Trident E&P, LLC v. HP, Inc.*, No. 24-cv-00790-LB, 2024 WL 4505471, at *8 (N.D. Cal. Oct. 15,

2   2024).  These factors are: "an economic relationship between the plaintiff and some third party,

3   with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of

4   the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt

5   the relationship; (4) *actual disruption* of the relationship; and (5) economic harm to the plaintiff

6   proximately caused by the acts of the defendant."  *Rincon Band of Luiseno Mission Indians etc. v.*

7   *Flynt*, 70 Cal.App.5th 1059, 1112 (Cal. App. 2021) (internal quotation marks omitted) (brackets

8   and emphasis in original).

9        The SAC and TAC merely assert that Defendants "interfered" with refinancing efforts but

10   do not name a supposed third party, nor do they plausibly allege pending refinancing discussions,

11   knowledge by Defendants of such efforts, or any independently wrongful act by Defendants

12   intended to disrupt such efforts.  The claim consists entirely of vague legal conclusions and

13   therefore fails to adequately state a claim.  Fed. R. Civ. P. 12(b)(6).  As noted above, Mr.

14   Brinskele failed to establish a wrongful act by Defendants.

15        Accordingly, Mr. Brinskele's claim for tortious interference with prospective economic

16   advantage is **DISMISSED**.

17        6.    Unjust Enrichment

18        Unjust enrichment is not a standalone cause of action under California law, and the SAC

19   and TAC do not plausibly plead entitlement to restitution.  *See Melchior v. New Line Prods., Inc.*,

20   106 Cal.App.4th 779, 793 (Cal. 2003) ("Unjust enrichment is not a cause of action . . . but rather

21   'a general principle, underlying various legal doctrines and remedies.'  It is synonymous with

22   restitution.").  Beyond the barebones allegation that "Defendants realized profits from the Loan

23   disproportionate to any value provided," SAC ¶ 27, the pleadings do not allege a viable

24   entitlement to restitution.  As noted above, allegations that the loan terms themselves were

25   fraudulent are also conclusory.

26        Accordingly, Mr. Brinskele's unjust enrichment theory is **DISMISSED**.

27        7.    Expanded Civil Conspiracy and IRS-Related Claims

28        Mr. Brinskele alleges that Chase coordinated with IRS personnel to maintain fraudulent tax

United States District Court
Northern District of California

1   liens and to deprive him of the Property.  SAC ¶¶ 32, 38–42.  The SAC and TAC allege no

2   plausible facts showing coordination between Defendants and IRS officials, no specific acts by

3   Defendants relating to IRS enforcement, and no factual basis to conclude that any tax lien was

4   fraudulent, forged, or improperly maintained.  Even taking all inferences in Mr. Brinskele's favor,

5   conspiracy claims require some plausible facts suggesting agreement and overt acts — all of

6   which are absent here.  Fed. R. Civ. P. 12(b)(6); *Harris v. Clearlake Police Dept.*, No. 12-0864-

7   YGR, 2012 WL 3042942, at *10 (N.D. Cal. July 25, 2012) ("To survive a 12(b)(6) for a civil

8   conspiracy claim, a plaintiff must 'provide some factual basis to support the existence of the

9   elements of a conspiracy: [1] agreement and [2] concerted action.'") (quoting *Crabtree v.*

10  *Muchmore*, 904 F.2d 1475, 1480–81 (10th Cir. 1990)) (brackets in original).

11        Because Mr. Brinskele's civil conspiracy and IRS-related claims do not meet the pleading

12  requirements, the claims are **DISMISSED**.

13        8.    Declaratory Judgment and Requests to Void the Loan

14        Mr. Brinskele seeks a declaration from the Court that: (a) the undated endorsement

15  "creates fatal irregularities defeating enforcement;" (b) Chase "has no authority to enforce" the

16  loan without original copies of documents; (c) the foreclosure proceedings are unlawful; and (d)

17  "Chase must prove chain of title and authority before any enforcement action."  TAC ¶¶ 89–90.

18        As a preliminary matter, declaratory relief is a remedy, not a standalone cause of action;

19  declaratory relief must be preceded by a viable underlying claim.  *Doe 1 v. GitHub, Inc.*, 672 F.

20  Supp. 3d 837, 861 (N.D. Cal. 2023).  Moreover, Mr. Brinskele's request for a declaration that "the

21  foreclosure proceedings are unlawful" would require this Court to contradict the substantive terms

22  of a pre-existing federal judgment ordering the Property's foreclosure, sale, and distribution of

23  proceeds. See RJN Ex. 1.  To the extent Mr. Brinskele seeks to challenge that judgment, the

24  appropriate avenue is the appeal he has already taken to the Ninth Circuit.

25        Because Mr. Brinskele's requested declaratory relief rests on theories already found

26  implausible above — including mortgage fraud and document forgery — Mr. Brinskele's request

27  for declaratory relief fails.

28        Accordingly, Mr. Brinskele's request for declaratory relief is **DISMISSED**.

9.      FCRA

Mr. Brinskele alleges that Defendants misreported information to credit bureaus in violation of the FCRA.  SAC ¶¶ 34–35.  But the pleadings lack non-conclusory facts describing what information was furnished, why it was inaccurate, or how Defendants purportedly failed to comply with their statutory obligations.  The SAC and TAC identify no specific credit entry, no dates or contents of any alleged reporting, and no facts showing that Defendants received or ignored a proper notice of dispute.  *See* SAC; TAC.  Nor does Mr. Brinskele explain how any purported reporting harmed his credit or reputation.  *Id.*

Because the pleadings do not identify any actionable inaccuracy or any conduct that would give rise to liability under the FCRA, the claim is **DISMISSED**.

10.     Intentional Infliction of Emotional Distress

Mr. Brinskele's TAC expands on the intentional infliction of emotional distress claim raised in the SAC.  The TAC explains that, by filing "fraudulent documents in federal court to foreclose on someone's home while concealing the absence of original documents," Defendants "caused severe emotional distress" including anxiety, depression, and psychological injury.  SAC ¶¶ 36–37; TAC ¶¶ 75–79.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (Cal. 2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (Cal. 1993)) (internal quotation marks omitted).

As noted in the above discussion, Mr. Brinskele has not adequately pled fraud by Defendants.  The Court does not doubt that the events at issue here have been immensely stressful for Mr. Brinskele.  But conduct arising from Defendants' loan servicing, enforcement, and foreclosure activity does not rise to the requisite level of wrongfulness and outrageousness to sustain a claim for intentional infliction of emotional distress.  Mr. Brinskele's surviving

1    allegations consist of relatively routine foreclosure-related actions.  Conclusory statements that

2    Defendants acted "outrageously" do not suffice to state a claim.

3        Accordingly, Mr. Brinskele's claim for intentional infliction of emotional distress is

4    **DISMISSED**.

5        11.    Constitutional Tort, Bivens, and Due Process

6        Mr. Brinskele's SAC includes a cause of action for constitutional violations, namely that

7    "IRS officials violated Plaintiff's Fifth Amendment rights by enforcing knowingly invalid liens. . .

8    . Plaintiff is entitled to Bivens relief."  SAC ¶ 43–45.  Neither the SAC nor the TAC expand on

9    this claim in meaningful detail.

10       Again, this action is directed at Chase and CRC, not the IRS.  Any IRS officials' alleged

11   violations of the Constitution are beyond the scope of this action.  Moreover, Mr. Brinskele does

12   not plausibly allege that Chase or CRC are state actors, acted under color of federal law, or

13   engaged in joint action with government officials.

14       Because Mr. Brinskele alleges no facts supporting the vague constitutional claims, and

15   because this claim appears directed at non-parties, the claims are **DISMISSED**.

16       12.    Abuse of Process

17       Mr. Brinskele alleges that "Chase and IRS agents misused lawful process to achieve

18   foreclosure for ulterior purposes."  SAC ¶ 46.

19       Abuse of process, however, concerns the misuse of judicial processes, not private conduct

20   undertaken outside a court proceeding. *See Estate of Tucker ex rel. Tucker v. Interscope Records,*

21   *Inc.*, 515 F.3d 1019, 1037 (9th Cir. 2008).  To successfully state such a claim, a plaintiff must

22   allege that the defendant: (1) used a judicial process for an improper or ulterior purpose, and (2)

23   committed a willful act in the course of using that process that was not proper in the regular

24   conduct of the proceeding.  *Id.*

25       The pleadings do not meet either requirement.  Mr. Brinskele does not identify any judicial

26   process that Chase or CRC allegedly misused.  His allegations instead focus on Defendants' loan-

27   servicing and foreclosure-related actions, which do not constitute "process" for the purposes of

28   this tort.  No judicial action with respect to foreclosure by Chase or CRC has occurred.  Nor does

United States District Court
Northern District of California

16

1   Mr. Brinskele allege any improper act taken within a court proceeding itself.

2       Because the pleadings fail to allege misuse of a judicial process or any willful act

3   undertaken in connection with such a process, the abuse of process claim fails as a matter of law

4   and is **DISMISSED**.

5       13.     APA, FOIA, and Unlawful Collection Under Void Judgment

6       Mr. Brinskele alleges that the IRS enforced loan documents "in defiance of Notice 2006-

7   50"[3] and that "FOIA and administrative lien-removal requests were ignored."  SAC ¶¶ 48–49.  He

8   further alleges, in support of an "unlawful collection under void judgment" claim, that the IRS

9   "continued to enforce a judgment issued without jurisdiction" and that enforcement of such a

10  judgment violates due process.  SAC ¶¶ 54–55.

11      These claims do not concern the conduct of either Chase or CRC.  They are directed

12  exclusively at actions taken by the IRS, a non-party.  The SAC and TAC identify no facts

13  suggesting that Chase or CRC participated in, directed, or jointly engaged in any IRS enforcement

14  activity.  Nor do the pleadings allege that Chase or CRC acted under color of law, qualified as

15  state actors, or otherwise exercised authority that could make them liable for alleged constitutional

16  or administrative violations attributable to a federal agency.  Moreover, the "void judgment"

17  theory concerns the validity of the federal Tax Enforcement judgment issued in the case before

18  Judge Wilken action and does not state a claim against the defendants in this matter.

19      Because the pleadings do not allege that Chase or CRC are state actors, acted jointly with

20  the IRS, or are otherwise subject to liability under the APA, FOIA, or constitutional theories

21  directed at the IRS, these claims fail as a matter of law.  Accordingly, Mr. Brinskele's APA and

22  FOIA claims, and his claim for unlawful collection under void judgment, are **DISMISSED**.

23      14.     RICO

24      Mr. Brinskele's TAC asserts a civil RICO claim premised on alleged acts of mail fraud,

25

26  ───────────────────────

27  [3] Mr. Brinskele describes IRS Notice 2006-50 as a notice confirming an excise tax illegal in 2006.
    *See* SAC ¶¶ 40–41.  IRS Notice 2006-50 appears to be a guidance document explaining that, in the
    context of telephonic communications, "amounts paid for time-only service are not subject to the
    tax imposed by" Internal Revenue Code § 4251.  It is not clear how Notice 2006-50 relates to
28  mortgage enforcement efforts against Mr. Brinskele.

United States District Court
Northern District of California

wire fraud, bank fraud, and money laundering.  TAC ¶¶ 46–52.

Mr. Brinskele contends that Defendants committed mail and wire fraud by filing a promissory note with an undated endorsement and by charging Mr. Brinskele interest at 6.625% rather than the 2% rate he believes was required under the National Mortgage Settlement ("NMS").  *Id.*  He further alleges that Defendants engaged in bank fraud by maintaining an "artificial loan balance" despite his asserted payment history.  Mr. Brinskele also references money laundering without supplying any factual detail.

These allegations all fall short of stating a RICO claim.  A plaintiff must plausibly allege at least two predicate acts of racketeering supported by specific factual allegations.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) ("To state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts.").  "Further, predicate acts involving fraud for civil RICO claims must be pleaded with particularity as required by Rule 9(b)."  *Focus 15, LLC v. NICO Corp.*, No. 21-cv-01493-EMC, 2022 WL 2355537, at *3 (N.D. Cal. June 30, 2022) (Chen, J.) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)).

Here, the TAC does not plausibly allege any false statement, misrepresentation, or deceptive act constituting mail or wire fraud.  As discussed above, the presence of an undated endorsement does not, without more, give rise to an inference of forgery or fraudulent intent.  And the TAC offers no additional facts suggesting that Defendants fabricated documents, concealed information, or otherwise misrepresented their authority to enforce the note.  The TAC's assertions regarding interest rates also fail: they identify no contractual term, statutory obligation, or provision of the NMS that entitled Mr. Brinskele to a 2% interest rate.

The allegations of bank fraud are likewise conclusory and do not rise to the level of plausibility.  Mr. Brinskele does not describe what conduct was fraudulent, what statements were false, how any party was deceived, or what specific actions Defendants took to maintain an "artificial" loan balance.  He alleges no facts showing intent to defraud beyond his own characterizations of Defendants' conduct as "fraudulent."  Conclusory labels cannot satisfy the requirement that fraud be pled with particularity.

Finally, the TAC provides no factual support at all for its reference to money laundering. It does not describe any transaction, transfer, or act that would constitute such an offense.

Because the TAC does not plausibly allege any cognizable predicate acts, the RICO claim fails under both Rule 9(b) and Rule 12(b)(6). Accordingly, Mr. Brinskele's RICO claim is **DISMISSED**.

### 15.     Slander of Title

Mr. Brinskele's TAC alleges that Defendants recorded and published false "claims against Plaintiff's property." TAC ¶¶ 58–61.

To state a claim for slander of title, a plaintiff must allege (1) a publication, (2) that is false, (3) made without privilege or justification, and (4) that directly causes pecuniary loss. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1030 (Cal. App. 2012). The TAC does not plausibly allege any false publication. It does not plausibly identify a particular notice or explain what statement in any recorded document was false. Instead, the TAC asserts in conclusory terms that any foreclosure-related proceeding must be "false" in nature because Defendants lack original loan documents or because the promissory note contains an undated endorsement. As discussed above, however, those allegations do not plausibly suggest fraud or invalidity, and they do not transform otherwise routine foreclosure notices into actionable misstatements.

The TAC also does not allege facts showing that any recorded document caused a direct pecuniary loss, which is an essential element of the claim. *Sumner Hill*, 205 Cal.App.4th at 1030. Conclusory assertions of harm, without more, are insufficient.

Because Mr. Brinskele fails to plausibly allege any false recorded statement or resulting pecuniary damage, the slander of title claim is **DISMISSED**.

### 16.     California Unfair Competition Law

Mr. Brinskele's TAC asserts a claim under California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*, premised on the same theories that underlie his fraud-based claims: that Defendants lack authority to enforce the loan because they cannot produce original documents, that the undated endorsement is fraudulent, and that Defendants improperly charged excessive interest.

United States District Court
Northern District of California

1    TAC ¶¶ 71–74.  The TAC does not allege any additional facts suggesting unlawful, unfair, or

2    fraudulent business practices beyond those already addressed elsewhere in this order.

3        To the extent the UCL claim sounds in fraud, it must satisfy Rule 9(b).  For the reasons set

4    forth above, it does not do so.  To the extent the claim rests on supposedly unlawful conduct, it

5    simply repackages other causes of action that fail for the reasons already explained.  And the

6    TAC's "unfairness" theory consists only of conclusory assertions that Defendants created

7    "undated endorsements" and concealed "missing documents" without factual allegations

8    describing conduct that could plausibly be deemed unfair under California law.  *Id.*

9        Because the TAC does not allege facts showing any unlawful, unfair, or fraudulent

10    business practice, and because the claim merely echoes the same speculative and unsupported

11    theories found insufficient in the preceding sections, the UCL claim fails to state a claim for relief

12    and is **DISMISSED**.

13        17.    Quiet Title

14        Mr. Brinskele's TAC seeks to quiet title to the Property on the ground that Defendants

15    have "no enforceable interest" in the Property because the deed of trust is legally invalid.  TAC ¶¶

16    85–87.  He asserts that the lien is unenforceable due to the undated endorsement, missing loan

17    documents, and "systematic statutory violations creating fatal chain of title defects."  *Id.*  These

18    allegations mirror the theories underlying his fraud and wrongful foreclosure claims and rely on

19    the same conclusory assertions: principally, that Chase cannot produce original WaMu documents

20    and that the promissory note bears an undated endorsement.  As discussed above, these allegations

21    do not plausibly establish fraud, forgery, or any defect that would render Defendants' interest in

22    the Property void.

23        The TAC does not allege any facts establishing that Mr. Brinskele holds superior title free

24    of Defendants' interest.  Nor does it allege facts showing that the deed of trust was invalid or

25    rendered void by any particular act or defect.  Instead, the TAC relies on conclusory assertions

26    without identifying concrete defects that would invalidate Defendants' interest.

27        Because the TAC does not allege facts showing that Defendants' interest in the property is

28    invalid or that Mr. Brinskele possesses superior title, the quiet title claim is not plausible.  It is

therefore **DISMISSED**.

**VI.**      <u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Brinskele's TAC is **DISMISSED WITHOUT LEAVE TO AMEND**.


      **IT IS SO ORDERED**.


Dated: December 8, 2025

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

21